UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANA A. WESOLEK,

      Plaintiff,

v.                   Case No: 2:19-cv-463-FtM-29MRM

LAUREN WESOLEK AND BRYAN J.
WESOLEK,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, to Dismiss for Failure to State a Cause of Action, or For a More Definite Statement, and Motion to Strike (Doc. #55) filed on June 1, 2020. Plaintiff filed a Response in Opposition (Doc. #60) on June 15, 2020. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Plaintiff Dana A. Wesolek (Plaintiff or Dana) filed a three-count Second Amended Complaint alleging that defendants Bryan J. Wesolek and Lauren Wesolek (collectively Defendants, or Bryan or Lauren respectively) violated the Florida Uniform Fraudulent Transfer Act (FUFTA or the Act), Fla. Stat. § 726.101 et seq. (Doc. #49, ¶ 1.) The following chronology is set forth in the Second Amended Complaint:

1

In 2014 Dana filed a Petition for Dissolution of Marriage against her then-husband Bryan. After contentious proceedings, on April 24, 2018, the Porter County Superior Court (Superior Court) in Indiana entered a divorce decree Judgment. (Doc. #49, ¶ 11; Doc. #49-1, pp. 1-57.) Among other things, the divorce decree Judgment divided up various property between Dana and Bryan, ordered Bryan to pay certain debt which secured marital assets awarded to Dana (the Secured Debt), and ordered Bryan to pay Dana $1,276,275.13 as an "Equalization Payment." (Doc. #49, ¶ 11; Doc. #49-2, pp. 23-24.) A subsequent stipulation revised the Equalization Payment to $1,096,766.63. (Doc. #49, ¶ 11; Doc. #49-3, pp. 3, 12.) The Secured Debt totaled approximately $893,354.18 as of January 11, 2019. (Doc. #49, ¶ 12.) Bryan was required to pay the Equalization Payment and the Secured Debt by January 11, 2019, but did not do so. (Id., ¶ 13.)

Dana domesticated the divorce decree Judgment in Florida. On November 15, 2018 and May 9, 2019, the divorce decree Judgment was recorded with the Lee County Clerk of the Circuit Court pursuant to the Florida Enforcement of Foreign Judgment Act, Fla. Stat. §§ 55.501-55.509. (Id., ¶¶ 16-17.) On April 9, 2019, a Judgment Lien Certificate, naming Bryan Wesolek as the judgment debtor, was filed with the Florida Department of State and assigned file no. J19000251734. (Id., ¶ 18.)

Bryan appealed the divorce Judgment issued by the Superior Court. (Id., ¶ 19.) On August 9, 2019, the Court of Appeals of Indiana issued its Memorandum Decision denying Bryan's appeal and affirming the divorce judgment. (Id.); Wesolek v. Wesolek, 18A-DR-2419 (Ind. Ct. App., Aug. 29, 2019).

Following entry of the divorce Judgment, defendants Bryan and Lauren were married on August 30, 2018. (Doc. #49, ¶ 3.)

## II.

Plaintiff alleges that Defendants made actual and constructive fraudulent transfers which violated the FUFTA. Generally,

> [t]he FUFTA allows a creditor to unwind a transfer of the debtor's property to a third party—and thus to use the property to satisfy its claims against the debtor—when the act deems the transfer "fraudulent" as to creditors. See generally §§ 726.105-.108.

> The act identifies three categories of such transfers: (1) transfers made "[w]ith actual intent to hinder, delay, or defraud" creditors, § 726.105(1)(a); (2) certain types of transfers for which the debtor does not receive "reasonably equivalent value" in exchange for the asset transferred, §§ 726.105(1)(b), .106(1); and (3) transfers to an insider of the debtor for an antecedent debt when the debtor is insolvent and the insider has reasonable cause to know that, § 726.106(2). When a transfer falls into one of these categories, FUFTA affords the creditor an array of remedies against the debtor and the third-party transferee, including the avoidance of the transfer, attachment against the asset transferred, injunctive relief, appointment of a receiver, and in the case of a judgment creditor, execution upon the transferred properties. § 726.109.

3

<u>Nat'l Auto Serv. Centers, Inc. v. F/R 550, LLC</u>, 192 So. 3d 498, 504 (Fla. 2d DCA 2016).

The Second Amended Complaint identifies three items which are alleged to have been fraudulently transferred.  First, on November 30, 2016, Bryan purchased a diamond ring valued at $10,944.16, and on an unspecified subsequent date transferred it to Lauren as a gift. (Doc. #49, ¶¶ 20-21.) Second, Bryan caused Wesolek Properties, LLC to impermissibly sell the "Lee Street Building" on July 26, 2018.  Bryan received net sale proceeds of approximately $1,100,000, failed to distribute any of those funds to LLC co-member Dana, and used a portion of these funds to purchase the "Mar Lago Circle House" for Lauren for $479,900. (<u>Id.</u>, ¶¶ 26-28.) Third, in September and December 2018 Bryan transferred cash to Lauren totaling at least $620,000 as a gift. (<u>Id.</u>, ¶¶ 22-31, 33, 47, 53-54.)

The Second Amended Complaint sets forth three counts for violations of the FUFTA.  Count I alleges that defendants fraudulently transferred (1) the ring from Bryan to Lauren, (2) a portion of the proceeds from the sale of the Lee Street Building to purchase the Mar Lago Circle House for Lauren, and (3) at least $620,000 to Lauren, all with the intent to hinder, delay, and defraud creditor Dana, in violation of Fla. Stat. 726.105(1)(a). (Doc. #49, ¶¶ 46-47.) Count II alleges that defendants transferred the same items to Lauren and did not receive reasonably equivalent

4

value in exchange, in violation of Section 726.105(1)(b). (Doc. #49, ¶¶ 7-10, 53, 55.)    Count III alleges that defendants transferred the same items to Lauren, who was an insider of the Bryan, for an antecedent debt when Bryan was insolvent and Lauren had reasonable cause to know of the insolvency, in violation of Fla. Stat. § 726.106(1) and (2).   (Doc. #49, ¶¶ 60-64.)

### III.

Defendants seek dismissal of Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction. (Doc. #55, pp. 5-11.) Alternatively, Defendants seek dismissal of the portion of all counts relating to the transfer of the ring because the ring (1) was exchanged for a promise to marry, and (2) was transferred more than one year before the filing of this action, and therefore the claim is barred pursuant to Section 726.110(3). (Id., p. 11.) Defendants also argue that all three counts should be stricken because the allegations related to the divorce are redundant, immaterial, impertinent, or scandalous. (Id., p. 12.) Finally, Defendants assert the Court should strike Plaintiff's request for attorney's fees because Chapter 726 does not provide for recovery of such fees. (Id.)

**A. Subject Matter Jurisdiction**

Subject matter jurisdiction in this case is premised on the diversity of citizenship between the parties. (Doc. #49, ¶ 5.) This requires complete diversity of citizenship, and that the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); PTA-Fla, Inc. v. ZTE USA, Inc., 844 F.3d 1299, 1305 (11th Cir. 2016).

The Court is satisfied that complete diversity between the parties has been pled in the Second Amended Complaint, which alleges that Plaintiff is a citizen of the State of Indiana while Defendants are citizens of Florida. Likewise, the Court finds the amount in controversy is sufficiently pled based on the allegations that Bryan transferred a ring valued at $10,944.16, provided $479,900 to purchase the "Mar Lago Circle House," and transferred at least $620,000 in cash to Lauren. (Doc. #49, ¶¶ 20, 30, 33.)

Defendants nonetheless urge dismissal for lack of subject matter jurisdiction. Defendants argue that Plaintiff's claims are intertwined with domestic relations issues arising from the Indiana divorce proceeding, and therefore the case falls under the domestic relations exemption to diversity jurisdiction. (Doc. #55, pp. 5-11.)

"Diversity jurisdiction under 28 U.S.C. § 1332 is subject to a judicially created exemption for domestic relations and probate cases." Lucado v. Coherd, 581 F. App'x 809, 810 (11th Cir. 2014)

6

(quoting <u>Rash v. Rash</u>, 173 F.3d 1376, 1380 (11th Cir. 1999)); <u>see</u>
<u>Marshall v. Marshall</u>, 126 S. Ct. 1735 (2006). "The domestic
relations exception divests federal courts of the power to issue
divorce, alimony, and child custody decrees." <u>Leathers v.</u>
<u>Leathers</u>, 856 F.3d 729, 756 (10th Cir. 2017), citing <u>Ankenbrandt</u>
<u>v. Richards</u>, 504 U.S. 689, 703 (1992). "Not every case involving
a dispute between present or former spouses . . . falls within the
domestic relations exception," and a federal court "should sift
through the claims of the complaint to determine the true character
of the dispute to be adjudicated," while keeping the policies
favoring abstention in mind. <u>Kirby v. Mellenger</u>, 830 F.2d 176,
178 (11th Cir. 1987) (quotation marks omitted). The Supreme Court
has long "sanctioned the exercise of federal jurisdiction over the
enforcement of [a domestic-relations] decree that ha[s] been
properly obtained in a state court of competent jurisdiction." <u>See</u>
<u>Marshall v. Marshall</u>, 547 U.S. 293, 307 (2006) (quoting
<u>Ankenbrandt</u>, 504 U.S. at 702).

Although Defendants argue that Plaintiff's claims for
fraudulent transfer necessitate an in-depth analysis of the
Indiana divorce proceedings and decree, the Court disagrees. <u>See</u>
<u>Lucado v. Coherd</u>, 581 F. App'x 809 (11th Cir. 2014); <u>Jagiella v.</u>
<u>Jagiella</u>, 647 F.2d 561, 565 (5th Cir. Unit B 1981)). As in <u>Lucado</u>,
the primary issue in this case is whether defendants' transfer of
assets to Lauren was either actual or constructive fraud as to

Dana, as a creditor.  Plaintiff is not requesting that the Court consider the propriety of, or enforce or modify, the divorce decree. To the contrary, when "stripped of its verbiage," this case is about locating assets to satisfy the money judgment against Bryan set forth in the final divorce decree and registered with the Clerk of Court's Office in Lee County, Florida. <u>Lucado</u>, 581 F. App'x at 810. The Court finds that it has subject matter jurisdiction over Plaintiff's claims.

**B. Failure to State Causes of Action**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." <u>Id.</u> <u>See also</u> <u>Edwards v. Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### (1)  Count I

Count I of the Second Amended Complaint alleges that defendants engaged in fraudulent transfers in violation of Section 726.105(1)(a) of the FUFTA.  Section 726.105(1)(a) of the Act states in relevant part:

> **(1)** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the

> obligation was incurred, if the debtor made the transfer
> or incurred the obligation:
>
> (a)  With actual intent to hinder, delay, or defraud
>      any creditor of the debtor; or . . .

Fla. Stat. § 726.105(1)(a); (Doc. #49, ¶ 40.) "Under the FUFTA, any transfer made with actual intent to hinder, delay or defraud any present or future creditor is a fraudulent transfer." 2-Bal Bay Properties, LLC v. Asset Mgmt. Holdings, LLC, 291 So. 3d 617, 620 (Fla. 2d DCA 2020)(internal citation and marks omitted.)

"To prevail on a fraudulent transfer claim, a creditor must demonstrate (1) there was a creditor to be defrauded, (2) a debtor intending fraud, and (3) a conveyance—i.e., a "transfer"—of property which could have been applicable to the payment of the debt due." Isaiah v. JPMorgan Chase Bank, 960 F.3d 1296, 1302 (11th Cir. 2020)(citation omitted.) Defendants argue that Count I fails to state a cause of action as to the transfer of the ring from Bryan to Lauren because the ring was exchanged for a promise to marry, which is sufficient consideration for such a transfer as a matter of law. (Doc. #55, p. 11.) The Court disagrees.

Count I plausibly sets forth each component of a claim under Fla. Stat. § 726.105(1)(a), which does not contain a requirement regarding sufficient consideration. Bryan "transferred" the ring within the meaning of the FUFTA, since the FUFTA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting

with an asset or an interest in an asset." Fla. Stat. §
726.102(14). "As long as the debtor relinquishes some interest in
or control over the asset a FUFTA transfer has occurred, . . ."
Isaiah v. JPMorgan Chase Bank, 960 F.3d 1296, 1302 (11th Cir.
2020). The ring was initially the property of Bryan, and therefore
an "asset" under the FUFTA. Fla. Stat. § 726.102(2). At some
unspecified time Bryan gave the ring to Lauren. At that point,
the ring belonged to Lauren as a gift, Moody v. Newton, 264 So. 3d
292, 294 (Fla. 5th DCA 2019), although Bryan retained the ability
to recover the ring "if the engagement is terminated by the donee
or by mutual consent of the parties. The rationale of those cases
is that such presents are not absolute but are made upon the
implied condition that a marriage ensue." Gill v. Shively, 320
So. 2d 415, 416 (Fla. 4th DCA 1975). Once Bryan and Lauren were
married the ring belonged to Lauren, and Bryan relinquished all
his interest in the ring. Id. Because Plaintiff has stated a
plausible cause of action in Count I as to the ring, and the Motion
to Dismiss that portion of Count I is denied.

**(2)  Count II**

Count II alleges that Defendants violated Section
726.105(1)(b) of the Act, which provides:

> (1)  A transfer made or obligation incurred by a debtor
> is fraudulent as to a creditor, whether the
> creditor's claim arose before or after the transfer
> was made or the obligation was incurred, if the

> debtor made the transfer or incurred the
> obligation:
>
> . . .
>
> (b)  Without receiving a reasonably equivalent value
>      in exchange for the transfer or obligation, and
>      the debtor:
>
>      1. Was engaged or was about to engage in
>      a business or a transaction for which the
>      remaining assets of the debtor were
>      unreasonably small in relation to the
>      business or transaction; or
>
>      2. Intended to incur, or believed or
>      reasonably should have believed that he or
>      she would incur, debts beyond his or her
>      ability to pay as they became due.

Fla. Stat. § 726.105(1)(b); (Doc. #49, ¶ 52.)  Thus, a transfer made by a debtor is fraudulent as to a creditor if the debtor (1) made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," and (2) either (A) "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or (B) "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." In re Teltronics, Inc., 904 F.3d 1303, 1310 (11th Cir. 2018).

As with Count I, Defendants argue that Count II should be dismissed because Bryan received sufficient consideration, i.e., Lauren's promise to marry him, in exchange for the transfer of the

12

ring. (Doc. #55, p. 11.) Defendants argue that the Second Amended Complaint implies that the ring was exchanged for a promise to marry because it refers to defendant Lauren as Bryan's "new bride." (Id.; Doc. #49, ¶ 29.) Defendants read too much into the reference to "new bride."

Count II is silent as to whether the ring was transferred to Lauren in exchange for her "promise to marry" Bryan. See (Doc. #49, ¶¶ 20-21, 46.) Paragraph 29 of the Second Amended Complaint refers to Lauren Wesolek as Bryan's "new bride," but it does not reference the transfer of the ring and is not sufficient to support an inference of a bargained-for exchange. (Doc. #49, ¶ 29.)

In any event, it is not "consideration" but "value" that is at issue in Fla. Stat. 726.104. See Fla. Stat. § 726.105(1)(b) (providing for avoidance of a transfer where the debtor does not "receiv[e] a reasonably equivalent value in exchange for the transfer or obligation"). "Value" is given "if . . . property is transferred or an antecedent debt is secured or satisfied, . . ." Fla. Stat. § 726.104(1). A promise to marry is not that kind of "value." Defendant's Motion to Dismiss Count II of the Second Amended Complaint with respect to the transfer of the ring is denied.

### (3)  Count III

In Count III of the Second Amended Complaint, Plaintiff states a claim under Section 726.106 of the Act, which states:

**(1)** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

**(2)** A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Fla. Stat. §§ 726.106(1)-(2); (Doc. #49, ¶ 59.)

This statute sets forth two causes of action. "Under section 726.106[1], a debtor's transfer is fraudulent as to a creditor if (a) the creditor's claim arose before the transfer, (b) the debtor was insolvent at the time of the transfer or became insolvent because of the transfer, and (c) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer. § 726.106(1), Fla. Stat. (2013)." RREF SNV-FL SSL, LLC v. Shamrock Storage, LLC, 250 So. 3d 788, 789-90 (Fla. 1st DCA 2018). Under § 726.106(2), a debtor's transfer is fraudulent as to a creditor if (a) the creditor's claim arise before the transfer, (b) the transfer was made to an insider for an antecedent debt, (c) the debtor was insolvent at the time of the transfer, and (d) the insider had reasonable cause to believe the debtor was insolvent. Fla. Stat. § 726.106(2). Plaintiff asserts that

14

defendants violated both Section 726.106(1) and (2). (Doc. #49, ¶¶ 60-64.)

Defendants contend that because the ring was transferred for a promise to marry, it was exchanged for sufficient consideration, and the ring transfer portion of Count III should be dismissed. (Doc. #55, p. 11.) For the reasons discussed above as to Count II, the Court disagrees and finds that Count III is sufficiently pled.

Defendants also contend that Count III fails to state a cause of action as to the ring because the transfer took place more than one year before the filing of this action, and as a result, Plaintiff's claim would be barred under Section 726.110(3). (Doc. #55, p. 11.) Because this cannot be determined from the four corners of the Second Amended Complaint, this argument is rejected.

Section 726.110 provides fixed times in which claims based on these three categories of fraudulent transfers must be brought, or the claims are lost. A cause of action with respect to a fraudulent transfer § 726.106(1) is extinguished unless action is brought within 4 years after the transfer was made. Fla. Stat. § 726.110(2). A cause of action under § 726.106(2) is extinguished unless the action is brought within 1 year after the transfer was made. Fla. Stat. § 726.110(3).

For better or worse, a plaintiff does not have to set forth dates in a complaint which establish the claim is timely. As this Court has previously stated:

> A plaintiff is not required to anticipate and negate an affirmative defense in the complaint. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir.2004). A Rule 12(b)(6) motion to dismiss on statute of limitations grounds may be granted, however, if it is apparent from the face of the complaint that the claim is time-barred. La Grasta, 358 F.3d at 845–46. Nonetheless, a motion to dismiss on statute of limitations grounds should not be granted where resolution depends either on facts not yet in evidence or on construing factual ambiguities in the complaint in defendants' favor. Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1252 (11th Cir.2003).

Lesti v. Wells Fargo Bank, N.A., 960 F. Supp. 2d 1311, 1316–17 (M.D. Fla. 2013).

The Second Amended Complaint alleges that on or about November 30, 2016, Bryan purchased the ring, (Doc. #49, ¶¶ 20-21) and that on August 30, 2018, Bryan and Lauren were married. (Id., ¶ 3.) The original Complaint was filed on July 3, 2019, and neither it nor the Second Amended Complaint alleges a date on which the ring was transferred. Therefore, it is not possible for the Court to determine from the face of the Second Amended Complaint whether the § 726.106(2) portion of Count III is time-barred. The Court denies Defendants' Motion to Dismiss Count III.

**IV.**

In the alternative, Defendants request a more definite statement about the "purported debt associated with the transfer of the . . . ring," which Defendants assert took place two years prior to the entry of the divorce decree. (Doc. #55, p. 11.) This request is denied.

16

Pursuant to Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). See also Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs., 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012) (quoting Ramirez v. FBI, No. 8:10-cv-1819-T-23TBM, 2010 U.S. Dist. LEXIS 132271, 2010 WL 5162024, at *2 (M.D. Fla. Dec. 14, 2010)) ("A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]."). The Court finds the Second Amended Complaint is not "so vague or ambiguous" that Defendants could not reasonably respond. Euro RSCG Direct Response, 872 F. Supp. 2d at 1358 ("[A Rule 12(e)] motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail."). Plaintiff has provided specific facts about the elements of each claim, the people involved in each transfer, the amounts of each purported fraudulent transfer, and to the best of Plaintiff's knowledge, when the alleged transfers took place.  The information is sufficient to allow Defendants to formulate a response. The Court therefore denies Defendants' request for a more definite statement.

**V.**

Finally, Defendants urge the Court to strike "Plaintiff's allegations related to the divorce as redundant, immaterial, impertinent, or scandalous matter, *see e.g.*, Second Amended Complaint, ¶ 9." (Doc. #55, p. 12) and to strike plaintiff's request for attorney fees.  Both requests are granted.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "'A motion to strike is a drastic remedy[,]' which is disfavored by the courts." Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., No. 6:08-cv-305-Orl-19KRS, 2008 U.S. Dist. LEXIS 75334, at *5, 2008 WL 4186994 at *2 (M.D. Fla. Sept. 8, 2008). It is not intended to "procure the dismissal of all or part of a complaint." Id.  A motion to strike is often denied "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Bank of Am., N.A. v. GREC Homes IX, LLC, No. 13-21718, 2014 U.S. Dist. LEXIS

8316, at *14 (S.D. Fla. Jan. 23, 2014) (internal quotations and citations omitted).

The Court agrees that paragraph nine of the Second Amended Complaint should be stricken because it consists solely of findings from the Indiana Superior Court's marital dissolution proceeding that do not pertain to the transfers at issue in this case and may be prejudicial to defendant Bryan Wesolek. See Fed. R. Civ. P. 12(f); Bank of Am., 2014 U.S. Dist. LEXIS 8316, at *14. The Court therefore grants Defendants' Motion to Strike paragraph nine of the Second Amended Complaint.  If Defendants are seeking to strike other unspecified paragraphs relating to the divorce, such a request is denied.

The Court also strikes the request for attorney fees.  The "American Rule" firmly establishes that litigants "are ordinarily required to bear their own attorney's fees," and that a prevailing party is not entitled to recover attorney fees absent express statutory authority or an enforceable contract. Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 602 (2001). This is true whether applying federal or state law. Johnson v. Florida, 348 F.3d 1334, 1350 (11th Cir. 2003). There is no statutory attorney fee provision in the Act for fraudulent transfer actions. See Fla. Stat. § 726.101, et seq.; Transp. All. Bank, Inc. v. PeeWee's Hauling, Inc., No. 2:18-cv-499-FtM-66MRM, 2020 U.S. Dist. LEXIS 149861, at *32 n.9 (M.D. Fla.

July 29, 2020) (noting the FUFTA has no provision that explicitly provides for an award of attorney's fees). Even though Section 726.108(1)(c)(3) of the Act contains a catchall provision that authorizes courts to grant "[a]ny other relief the circumstances require," Florida courts have declined to award attorney's fees under this provision. Euro RSCG Direct Response, LLC, 872 F. Supp. 2d at 1364 (holding Section 726.108 does not provide a sufficient basis for attorney's fees); Pasternack v. Klein, No. 8:16-cv-482-T-33CPT, 2019 U.S. Dist. LEXIS 179272, at *5 (M.D. Fla. Aug. 26, 2019).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss, or in the alternative Motion For a More Definite Statement, and Motion to Strike (Doc. #55) is **GRANTED IN PART AND DENIED IN PART.**

2. Defendants' Motion to Strike is **GRANTED** only as it pertains to Paragraph Nine of the Second Amended Complaint and Plaintiff's request for attorney's fees.

3. The Motion is otherwise **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___22nd___ day of December, 2020.




JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record